The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner William C. Bost and the briefs and oral arguments on appeal. The appealing party has not shown good ground to receive further evidence or to amend the prior Opinion and Award. Accordingly, the Full Commission affirms, with slight modifications to Finding of Fact (20), the Deputy Commissioner's decision and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing on June 12, 1997 as:
 STIPULATIONS
1. The parties entered into a pretrial agreement dated June 2, 1997, which is incorporated into the record.
2. On October 28, 1996, an employer-employee relationship existed between plaintiff and defendant TRY, Inc. d/b/a Young Transportation.
3. On the date in question, the employer regularly employed more than three employees, and the parties were bound by and subject to the provisions of the North Carolina Workers' Compensation Act.
4. The carrier on the risk is Reliance National Indemnity.
5. The date of plaintiff's alleged injury by accident is October 28, 1996.
6. Plaintiff's average weekly wage is Four Hundred Two and 92/100 ($402.92) Dollars, which yields a compensation rate of Two Hundred Sixty-eight and 63/100 ($268.63) Dollars.
7. By letter dated July 31, 1997, the parties submitted by stipulation 115 numbered pages of medical records obtained from Dr. Hulkower.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
 FINDINGS OF FACT
1. On or near October 28, 1996, plaintiff Wallace Brownlee was an employee of the defendant Young Transportation, and had been so employed for approximately 19 years.
2. Wallace Brownlee drove a charter tour bus for the defendant. In this capacity, he drove both local and long distance. The local charters sometimes consisted of taking the same group of people to different tourist locations in Western North Carolina for a period of days. In those instances, the group would stay in a local hotel, and the charter bus would arrive in the mornings to take them on outings to such places as the Biltmore Estate, Chimney Rock and Lake Lure.
3. On or near October 28, 1997, Mr. Brownlee had been driving a day trip to Lake Lure. This particular group had been patrons of Mr. Brownlee's bus for several days prior to this particular trip. The group was staying at the Grove Park Inn in Asheville.
4. Upon leaving Lake Lure, the group requested that they keep the cooler of drinks in the bus. Mr. Brownlee complied with their request.
5. Upon arriving at the Grove Park Inn, Mr. Brownlee immediately picked up the cooler to remove it from the bus aisle and allow the passengers to disembark. In unloading the cooler, Mr. Brownlee backed down the steps. His right foot slipped off the bottom step, lodging his leg between the curb and the bus. He caught himself with the open door of the bus in order to keep from falling onto the ground. As he twisted to keep from falling, he felt severe pain in his right hip.
6. Immediately after the passengers left the bus, Mr. Brownlee returned to the terminal and called his supervisor and owner of the company Mr. Ralph Young, to let him know that he was injured and would not be able to drive the next day's trip. The company assigned Frank Avery to take Mr. Brownlee's trip.
7. The next day, Mr. Brownlee sought medical treatment from Dr. Charles J. DePaolo, his orthopaedic surgeon.
8. Mr. Brownlee has avascular necrosis, which has been present in both hips since some time prior to 1994, when he was first diagnosed. He had a left hip replacement in 1996, but had returned to work full time, full duty following that surgery by June of 1996. He testified that he was back to work full speed ahead by late June and had, in fact, been able to return to work earlier than his doctor had expected.
9. Although he had avascular necrosis in his right hip at the time of the accident, he did not have any pain until he slipped off the bus at the Grove Park Inn.
10. On October 30, 1996, Mr. Brownlee submitted a written report of his accident, giving notice to Young Transportation of his on-the-job injury. Mr. Brownlee obtained the reporting form from Mr. Tom Crouch, supervisor.
11. Dr. DePaolo testified that Mr. Brownlee had not complained to him of right hip pain until October 28, 1997, following the on-the-job accident. The medical records reflect that on September 7, 1994, Mr. Brownlee first saw Dr. DePaolo, complaining of left hip pain for the previous two years. Dr. DePaolo diagnosed him with avascular necrosis in both hips, although his right hip was not causing him any pain or decreased range of motion. For the next ten visits, over the next two years, Mr. Brownlee only complained of left hip pain. He never mentioned any problems with his right hip whatsoever. Likewise, the treatment Dr. DePaolo rendered, including hip replacement surgery, only addressed the left hip.
12. Following the accident in October of 1996, Mr. Brownlee requested to be allowed to return to work for a trip to New York in November. This return to work was approved by Dr. DePaolo after Mr. Brownlee expressed his need to keep working in order to have an income. Mr. Brownlee testified at the hearing on 12 June 1997 that he was determined to go on to work regardless of the pain.
13. Mr. Brownlee also testified that he was taking a large amount of pain medication in order to tolerate the trip he took in New York. He only continued to work because he needed an income, as the claim had been neither accepted nor denied at that time, and he was not receiving any workers' compensation for this accident. He testified that he was in so much pain on the New York trip that he could barely get in and out of the bus. Upon his return to Asheville, he returned to Dr. DePaolo, who on December 12, 1996, determined that Mr. Brownlee was disabled from the injury, and would probably be permanently disabled.
14. In his deposition, Dr. DePaolo stated that he did not think Mr. Brownlee could return to work as a bus driver, or in any occupation which would require use of the lower extremities.
15. Plaintiff saw Dr. Steve Hulkower for many years. On April 5, 1995, he presented with complaints of intermittent bilateral thigh pain. Dr. Walton saw plaintiff on June 2, 1989, at which time he noted a three-month history of increasing thigh pain. Rotation of plaintiff's hips reproduced his pain. Dr. Walton diagnosed a bilateral intrinsic hip condition. On February 6, 1990, Dr. Hulkower questioned whether plaintiff's bilateral hip pain was secondary to avascular necrosis. An MRI scan obtained on July 8, 1994, confirmed bilateral avascular necrosis. On August 24, 1994, plaintiff complained of bilateral hip pain, left greater than right, and was referred to Dr. DePaolo.
16. Plaintiff saw Dr. Charles DePaolo on September 7, 1994, for evaluation of bilateral hip pain. Plaintiff described a slow progressive onset of symptoms. He denied any history of trauma. X-rays obtained on September 7, 1994, confirmed bilateral avascular necrosis, right worse than left. Plaintiff had already developed cysting of the right hip.
17. Plaintiff returned to Dr. DePaolo on October 28, 1996, complaining of "some more" pain in his right hip. Dr. DePaolo performed a clinical examination and obtained X-rays of plaintiff's right hip. Dr. DePaolo found no evidence of trauma to plaintiff's right hip. According to Dr. DePaolo, plaintiff's condition on October 28, 1996, was consistent with his progressive avascular necrosis, without precipitating trauma. It was also consistent with progressive avascular necrosis aggravated and accelerated by continued alcohol consumption. Dr. DePaolo could not say to any degree of medical certainty what caused the condition he diagnosed on October 28, 1996. The greater weight of the evidence, inclusive of the medical evidence, does not support a finding that plaintiff's condition was caused, aggravated or accelerated by any incident of his employment on October 28, 1996, or otherwise beyond October 30, 1996.
18. Plaintiff called Dr. DePaolo's office on October 30, 1996, and requested a note releasing him to return to work without restrictions. On that occasion, he specifically reported that his leg was not bothering him at all. On November 7, 1996, he called again wanting to know about work restrictions. Plaintiff returned to Dr. DePaolo on November 15, 1996, for evaluation of his hip. He informed Dr. DePaolo that he was not having any problems. According to plaintiff's history, the symptoms he reported on October 28 had fully resolved by October 30, 1996. Dr. DePaolo authorized plaintiff to work without restrictions.
19. Plaintiff returned to Dr. DePaolo on December 12, 1996, complaining of increasing symptoms, which Dr. DePaolo considered to be a general progression of plaintiff's avascular necrosis.
20. Plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer on October 28, 1996. This resulted in the temporary aggravation of his avascular necrosis, but had fully resolved by October 30, 1996. Any disability that plaintiff may have had subsequent to that date was not causally related to his injury by accident.
 ***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an injury by accident on October 28, 1996, which resulted in a temporary aggravation of his underlying avascular necrosis. The results of this temporary aggravation of plaintiff's condition resolved completely by October 30, 1996. The evidence, inclusive of the medical evidence, fails to establish that plaintiff's condition after October 30, 1996, was causally related to his alleged injury on October 28, 1996.Anderson v. Northwestern Motor Co., 233 N.C. 372, 64 S.E.2d 265
(1951).
2. As a direct and proximate result of plaintiff's work related injury by accident on October 28, 1996, plaintiff sustained an injury to his right hip which necessitated treated to and including October 30, 1996.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendants shall pay all medical expenses incurred by plaintiff as a result of this October 28, 1996 compensable injury, through and including October 30, 1996.
2. Defendants shall bear the costs of the proceeding before the Deputy Commissioner, with each side bearing its own costs for the proceeding before the Full Commission.
 S/ _______________________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
S/ _____________________ RENÉE C. RIGGSBEE COMMISSIONER
S/ _____________________ BERNADINE S. BALLANCE COMMISSIONER